UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

NICOLE BURGESS,

            Plaintiff,

     -against-

TWO CHARLTON OWNERS CORP.,
CHARLTON OWNERS CORP. and ABIGAL
CONGER,

            Defendants.

ATTORNEYS AFFIRMATION
Case No.: 18-cv-5955 VEC

---

Stuart H. Finkelstein, an attorney duly admitted to practice in the United States District Court for the Southern District Court of New York, affirms under penalties of perjury as follows:

1. I am the attorney for NICOLE BURGESS the Plaintiff in the above captioned action.

2. I submit this Affirmation in response to the Order to Show Cause issued by the Court on January 29, 2019.

3. This is an action under Title III of the Americans with Disabilities Act.

4. My client, Ms. Burgess, is disabled and can only move about in a wheel chair. She engaged me by telephone to commence an action under the ADA to obtain injunctive relief against the defendants. If successful she would have obtained injunctive relief only, not monetary damages. If successful in prosecuting her action I would have been awarded her counsel fees and costs. Mrs. Burgess has no obligation to pay my counsel fees or costs, and no fees or costs can ever be collected from my client.

5. This action was commenced June 30, 2018. The complaint seeks injunctive relief, the repairs/modifications to the facility, (a restaurant) so that she can gain access to it in a wheelchair. In actions under the ADA the client does not pay a fee to the attorney, nor does the client pay expenses. Counsel fees are authorized by statute to be paid by the defendants. Thus, there was no written letter of engagement in this case because none is required where the client is not paying the attorney a fee.[1]

6. When Mrs. Burgess retained me, she gave me her telephone number, which was a mobile phone number. She did not provide me with her address, and did not have an email address. During my representation of her Mrs. Burgess never came to the office. My office was in Syosset, Long Island and she lived in New York City.

7. In early November 2018, during a telephone conversation with her she told me that she was in Georgia. I didn't ask her for any additional contact information in Georgia because I was able to reach her by mobile phone.

---

[1] 22 NYCRR Part 1215 Written Letter of Engagement, §1215.1 Requirements provides, in relevant part:

Effective March 4, 2002, an attorney who undertakes to represent a client and enters into an arrangement for, charges or collects any fee from a client shall provide to the client a written letter of engagement before commencing the representation, or within a reasonable time thereafter (i) if otherwise impracticable or (ii) if the scope of services to be provided cannot be determined at the time of the commencement of representation. For purposes of this rule, where an entity (such as an insurance carrier) engages an attorney to represent a third party, the term "client" shall mean the entity that engages the attorney. Where there is a significant change in the scope of services or the fee to be charged, an updated letter of engagement shall be provided to the client.

8. My last contact with Mrs. Burgess was during the last week of November 2018. I called her phone number on or about November 29, 2019 at which time I was told she was not coming back to New York until after the New Year. When I called her after that I received a message that the number was disconnected.

9. A conference call was held with the court on December 6, 2018 because my client did not provide HIPPA authorizations that were due by November 29, 2018. I told the court that I heard from her late on November 29, 2018 at which time I was told she was not coming back to New York until after the New Year. During the conference call I told the court that the last time I spoke to her she was down in Georgia and I was subsequently unable to reach her.

10. From November 28, 2019 through January 7, 2019 I called that number about three more times and each time I got a message that it was disconnected.

11. On January 7, 2019 I filed an affirmation with the Court in which I stated:

> My last contact with Plaintiff Burgess was the last week of November, 2018.
> Since that time, I have been unable to contact Plaintiff Burgess, and
> I have called Plaintiff Burgess and her phone number is not working and have
> been unable to communicate with her.

12. On January 22, 2019 Gary Ehrlich, the attorney for Two Charlton, filed an affirmation and memorandum of law in which he requested that the case be dismissed because I had not had any kind communication with my client for almost two months and had not demonstrated that I had the means to contact her in the near future. In so doing he accepted, without question, my representations that I had been unable to reach my client, as he relied upon them in support of his motion.

13. In the memorandum of law Mr. Ehrlich submitted in support of Two Charlton's motion he argued, among other things, that the court should dismiss the case with prejudice. He asserted that Plaintiff commenced this action nearly seven months earlier, "but has not had any communication with her attorney Stuart Finkelstein since last November. As demonstrated through Mr. Finkelstein's affirmation, he can no longer reach the plaintiff over the phone and she has not made any attempt to contact him to litigate the case." He argued that the Court must infer from Plaintiffs lack of communication that she no longer wishes to prosecute this case.

14. On January 22, 2019, after the motion to dismiss was made the attorneys for both parties signed a stipulation dismissing the case with prejudice and without costs.

15. I signed the stipulation because from the very beginning of this case defendant's lawyer Gary Ehrlich was very contentious. First, he was annoyed that I had filed for a default judgment as I obtained a Clerk's Certificate of Default against all the then defendants. After the Court admonished me about not following her procedure to obtain a default judgment, I agreed to let him interpose an Answer, yet he continued to be contentious. He even wrote a letter to the Court complaining about "not receiving plaintiff's counsel's cooperation". If the Court will review his papers in support of his motion it will observe that his they contain unnecessary ad hominem attacks upon me.

16. After I read his papers, I called him and his response, via email was "I am out of the office right now. What is it that you need to discuss?" Later on that day I had a conversation with Russell Edwards, Esq., Ehrlich's associate. He told me Mr. Ehrlich had no interest in speaking with me and I went on tell Mr. Russell that I wanted to discontinue the case, without prejudice, and with no costs and attorney fees to either side. He said that Mr. Ehrlich had no interest in doing that, as I had cost his client money for attorney fees as well as paying monies to their expert who had conducted a Site Inspection at the building. They wanted their money back. I was told if the case was dismissed without prejudice, or even if I made a motion to be relieved and Mrs. Burgess did not hire a new attorney or went pro se, or did not refile the case, they

would come after her for attorney fees and their costs.  They would only accept discontinuance with prejudice and they sent me their stipulation on January 21st. Under the circumstances, I felt compelled to sign it. I sent it back January 22nd.

17.  The Court accepted and "so ordered" and thereby approved of the stipulation, as demonstrated by the fact that it issued an order which stated: "IT IS HEREBY ORDERED that the Court will accept the parties' stipulation of dismissal with prejudice. The parties must refile the stipulation on ECF. Once the parties have refiled the stipulation, the Clerk of Court is respectfully directed to close the case."

18.  On January 29, 2019, after accepting the party's stipulation withdrawing the action with prejudice, Judge Caproni made an ex parte order directing me to show cause no later than February 8, 2019, why I should not be referred to the Grievance Committee of the Southern District of New York "for voluntarily dismissing his client's case with prejudice in apparent violation of Rule 1.2(a) of the New York Rules of Professional Conduct. "

19. It is submitted that my attempts to reach my client, before signing the stipulation, were reasonable under the circumstances. I had no address or telephone number for her and the last time I spoke to her she was in Georgia, and told me she was not returning to New York until after the new year. She is not prejudiced by the dismissal because she is not bound by it and could commence a new action against the same defendant. The court can also vacate the stipulation, sua sponte, on the ground that it is not binding on the plaintiff. (See memorandum of law)

20. It is further submitted that at the time I signed the stipulation this Court could not have believed that my conduct was in "in apparent violation of Rule 1.2(a) of the New York Rules of Professional Conduct" since it approved of the stipulation and made an order accepting it.  The Court knew at that time that I had lost all contact with Mrs. Burgess, yet it still accepted the stipulation of discontinuance with prejudice.

21. Respectfully, for the reasons set forth above the Court should not forward this matter to the Grievance Committee or take any further action with regard to this matter which is now concluded with the approval of the Court.

Dated: March 11, 2019
Syosset, New York

_____
Stuart H. Finkelstein, Esq.
Attorney for Plaintiff
338 Jericho Turnpike
Syosset, New York 11791
(718) 261-4900